**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| SOLERA MULTIFAMILY, LLC, and HICKORY INVESTORS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY J. TEGETHOFF, AET 2021 IRREVOCABLE TRUST, MONO SUERTE TRUST, TEGETHOFF DEVELOPMENT, LLC, and TEGETHOFF DEVELOPMENT CO, LLC,<br><br>Defendants. | ) | Case No. ______________________<br><br>JURY TRIAL DEMANDED |

**<u>COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF</u>**

Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, for their Complaint against Jeffrey J. Tegethoff, the AET 2021 Irrevocable Trust, the Mono Suerte Trust, Tegethoff Development, LLC, and Tegethoff Development Co, LLC, state:

**INTRODUCTION**

For years, Jeffrey J. Tegethoff ("Mr. Tegethoff") has held himself out as a sophisticated real estate developer, capable of developing "trophy assets with a 'develop to own forever' mindset."[1] Instead, Mr. Tegethoff has engaged in a pattern of deception by cultivating investor trust, soliciting funds under the guise of legitimate business ventures, and then diverting those very same funds to advance his luxurious lifestyle and personal financial interests. Plaintiffs and related entities were induced by Mr. Tegethoff to enter into several real estate development projects in Missouri and provided him (and his affiliated entities) with significant capital. Plaintiffs now know

[1] https://tegethoffdevelopment.com/ (last accessed December 18, 2025).

that, rather than using Plaintiffs' investment funds to develop the projects at issue, Defendants took their money and used it to fund Defendants' unrelated business projects and Mr. Tegethoff's lavish lifestyle.

## NATURE OF THE ACTION

1. This is an action for declaratory relief and damages for breach of contract, breach of fiduciary duty, fraud in the inducement, theft/conversion, unjust enrichment, and securities fraud arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and the Rule promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5, and Missouri law.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Solera Multifamily, LLC ("Solera Multifamily"), a member of Old Hickory Partners, LLC, is an Indiana limited liability company incorporated under the laws of the State of Indiana.

3. Solera Multifamily has 17 members: Amanda K. Wagner, Solera Equity Capital, LLC, Evalia Enterprises, LLC, James H. McDaniel Revocable Trust, WJF Properties, LLC, Steven R. Townsend, Ernest E. Baird, Karla M. Ajamie, Lara L. Baird, Scott D. Curson, Sara A. Curson, Sharon E. Taylor, Tracy D. Godby, Rik Smits, PSRB OHV, LLC, Jeffrey A. Townsend, and Lawrence E. Lloyd.

4. Amanda K. Wagner, Ernest E. Baird, Karla M. Ajamie, Sharon E. Taylor, Tracy D. Godby, and Jeffrey A. Townsend are citizens of the State of Indiana.

5. Steven R. Townsend and Lawrence E. Lloyd are citizens of the State of Michigan.

6. Lara L. Baird is a citizen of the State of Ohio.

7. Scott D. Curson and Sara A. Curson are citizens of the State of Georgia.

8. Rik Smits is a citizen of the State of Arizona.

9. Solera Equity Capital, LLC is an Indiana limited liability company incorporated under the laws of the State of Indiana.

10. Solera Equity Capital, LLC has two members: Shawn N. Bush and Jeffrey N. Bush.

11. Shawn N. Bush and Jeffrey N. Bush are citizens of the State of Indiana.

12. Evalia Enterprises, LLC is an Illinois limited liability company incorporated under the laws of the State of Illinois.

13. Evalia Enterprises, LLC has one member: Jerry L. McDaniel.

14. Jerry L. McDaniel is a citizen of the State of Illinois.

15. James H. McDaniel Revocable Trust is a trust administered in the state of Illinois.

16. James H. McDaniel Revocable Trust has one trustee: Jerry L. McDaniel.

17. Jerry L. McDaniel is a citizen of the State of Illinois.

18. WJF Properties, LLC is an Illinois limited liability company incorporated under the laws of the State of Illinois.

19. WJF Properties, LLC has one member: William J. Fecht.

20. William J. Fecht is a citizen of the State of Illinois.

21. PSRB OHV, LLC is an Indiana limited liability company incorporated under the laws of the State of Indiana.

22. PSRB OHV, LLC has three members: George M. Plews, Jeffrey D. Featherstun, and Tonya L. Bond.

23. George M. Plews, Jeffrey D. Featherstun, and Tonya L. Bond are citizens of the State of Indiana.

24. Plaintiff Hickory Investors, LLC ("Hickory Investors"), a member of Old Hickory Partners, LLC, is an Indiana limited liability company incorporated under the laws of the State of Indiana.

25. Hickory Investors has three members: Shawn N. Bush, Jeffrey N. Bush, and the Jeffrey N. Bush Spouse and Descendants Trust.

26. The Jeffrey N. Bush Spouse and Descendants Trust has one trustee: Shawn N. Bush.

27. Shawn N. Bush is a citizen of the State of Indiana.

28. Jeffrey N. Bush is also a citizen of the State of Indiana.

29. Defendant Jeffrey J. Tegethoff, manager of Old Hickory Partners, LLC, is a citizen of the State of Missouri.

30. Defendant Tegethoff Development, LLC ("Tegethoff Development"), a member of Old Hickory Partners, LLC, is a Missouri limited liability company incorporated under the laws of the State of Missouri.

31. Tegethoff Development has one member: Jeffrey J. Tegethoff, who is a citizen of the State of Missouri.

32. Upon information and belief, the AET 2021 Irrevocable Trust (the "AET Trust"), a member of Old Hickory Partners, LLC, and its beneficiary(ies)/member(s)/trustee(s) are citizen(s) of the State of Missouri.

33. A trustee of the AET Trust is Jeffrey J. Tegethoff, who is a citizen of the State of Missouri.

34. Upon information and belief, the Mono Suerte Trust and its beneficiary(ies)/member(s)/trustee(s) are citizen(s) of the State of Missouri.

35. Tegethoff Development Co, LLC ("Tegethoff Development Co") is a Missouri limited liability company organized under the laws of the State of Missouri.

36. Tegethoff Development Co has one member: Jeffrey J. Tegethoff, who is a citizen of the State of Missouri.

37. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 78aa because Plaintiffs' claims present well pleaded federal questions arising under the Securities Exchange Act. In connection with the conduct described herein, Mr. Tegethoff made use of the mails and/or the means or instrumentalities of interstate commerce.

38. This Court also has jurisdiction over the additional statutory and common-law claims through diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy is in excess of $75,000. Plaintiffs are residents of and domiciled in Indiana, Illinois, Michigan, Ohio, Georgia, and Arizona and Defendants are residents of and domiciled in Missouri.

39. This Court has personal jurisdiction over Mr. Tegethoff because Mr. Tegethoff is domiciled in Missouri.

40. This Court has personal jurisdiction over Tegethoff Development because Tegethoff Development is domiciled in Missouri.

41. Upon information and belief, this Court has personal jurisdiction over the AET Trust because the AET Trust is domiciled in Missouri.

42. Upon information and belief, this Court has personal jurisdiction over the Mono Suerte Trust because the Mono Suerte Trust is domiciled in Missouri.

43. This Court has personal jurisdiction over Tegethoff Development Co because Tegethoff Development Co is domiciled in Missouri.

44. Plaintiffs' claims for declaratory relief are authorized by 28 U.S.C. §§ 2201–02, by Federal Rule of Civil Procedure 57, and by the inherent equitable powers of this Court.

45. Venue in this Court is proper under 28 U.S.C. § 1391 (b)(1), (c)(1), and (d) in that Defendants are all residents of this District and the AET Trust, the Mono Suerte Trust, Tegethoff Development, and Tegethoff Development Co are subject to personal jurisdiction in this District.

46. Mr. Tegethoff directly and indirectly made use of the means and instrumentalities of interstate commerce in connection with the conduct complained herein.

## FACTS COMMON TO ALL ALLEGATIONS

47. Together, Shawn N. Bush and Jeffrey N. Bush operate Hickory Investors and Solera Equity Capital, LLC, which is the manager of Solera Multifamily. The Bushes have more than sixty years of combined experience in accounting, commercial real estate, and asset management.

48. In November 2018, the Bushes were introduced to Mr. Tegethoff by a mutual acquaintance. Mr. Tegethoff subsequently solicited their interest in investing in real estate projects, which the Bushes did through several entities.

### A. MR. TEGETHOFF INDUCES PLAINTIFFS TO PURCHASE INTERESTS IN OLD HICKORY PARTNERS

49. In early 2022, still believing their investments in the other projects to be successful, Shawn Bush spoke with Mr. Tegethoff about investing in a real estate project in St. Peters, Missouri to be known as Old Hickory Village (the "Project").

50. On March 2, 2022, Mr. Tegethoff provided Shawn Bush with information regarding the Project and represented that Mr. Tegethoff would be the manager of Old Hickory Partners, LLC ("Old Hickory Partners") and had the authority to sell membership interests in Old Hickory

Partners (collectively, the "Offering Memorandum"), a copy of which is attached here as **Exhibit A**.

51. In the Offering Memorandum and in his communications with Shawn Bush, Mr. Tegethoff offered investors capital appreciation in Old Hickory Partners, which would invest in the construction of the Project as the general partner of Old Hickory Village, LP (the "Limited Partnership" or "Old Hickory Village").

52. The Project would be structured as follows:




53. Mr. Tegethoff and Shawn Bush discussed the specifics of the sale and purchase of membership interests in Old Hickory Partners.

54. During his discussions with Shawn Bush, Mr. Tegethoff confirmed to Shawn Bush that he, Mr. Tegethoff would be the manager of Old Hickory Partners.

55. On or about March 10, 2022, Shawn Bush and Mr. Tegethoff, as well as another Tegethoff Development employee, toured the proposed Project site.

56. On June 4, 2022, at 12:25 p.m., Mr. Tegethoff provided copies of the operating agreement for Old Hickory Partners to Shawn Bush and other investors, A true and accurate copy

of the executed Old Hickory Partners' operating agreement (the "Operating Agreement") is attached here as **Exhibit B**.

57. In the operating agreement, Mr. Tegethoff, as manager of Old Hickory Partners, specifically represented that he would be authorized to act on behalf of Old Hickory Partners and that, "as advisable or appropriate for [Old Hickory Partners]," he would "consummate" the contributions to Old Hickory Partners and that Old Hickory Partners would "invest in [the Limited Partnership] as a general partner." (Ex. B, Operating Agreement, p. 2, § 1.1(B)).

58. Indeed, over the course of written and verbal communications between March to July 2022, Mr. Tegethoff, personally, as manager of Old Hickory Partners, and on behalf of Tegethoff Development, a member of Old Hickory Partners, repeatedly represented that investor funds invested in Old Hickory Partners would be used solely to invest in the Limited Partnership.

59. Despite present knowledge that he would use Plaintiffs' investment in Old Hickory Partners for purposes unrelated to the Project, Mr. Tegethoff did not disclose this in order to induce Plaintiffs to invest in Old Hickory Partners and to obtain these funds for the benefit of himself and his related entities.

60. Mr. Tegethoff knew that if he told Plaintiffs the truth, that he was using the monies to pay personal and unrelated business expenses, Plaintiffs would not have invested in Old Hickory Partners.

61. As the manager of Old Hickory Partners, Mr. Tegethoff owed a duty to Plaintiffs to use Plaintiffs' capital contributions as he represented—to invest in the Limited Partnership.

62. At the time Mr. Tegethoff made representations to Shawn Bush regarding Old Hickory Partners, Mr. Tegethoff knew his statements were untrue and that he would use any funds collected for purposes unrelated to Old Hickory Partners and the Limited Partnership, including

for his own benefit and/or for the benefit of the AET and Mono Suerte Trusts, Tegethoff Development, and Tegethoff Development Co.

63. Consistent with his representations used to induce Plaintiffs' investment, the terms of the Operating Agreement required Mr. Tegethoff to use the capital contributions to Old Hickory Partners solely to invest in the Limited Partnership. If he did not, Mr. Tegethoff had a duty to inform the members of Old Hickory Partners, including Plaintiffs, that he would not be using the capital contributions to invest in the Limited Partnership.

64. Based on Mr. Tegethoff's written and verbal representations, the site visit, and Mr. Tegethoff's representations in the Offering Memorandum and the Operating Agreement, Shawn Bush agreed to purchase membership interests in Old Hickory Partners via Plaintiffs.

65. On or about July 5, 2022, in reliance on Mr. Tegethoff's representations, Solera Multifamily and Hickory Investors contributed $2,000,000 and $450,000, respectively to Old Hickory Partners, in exchange for membership interests in Old Hickory Partners.

66. Plaintiffs wired the funds to Old Hickory Partners' account at CIBC Bank.

67. On or about July 11, 2022, Plaintiffs, Mr. Tegethoff, Tegethoff Development, and the AET Trust, among others, executed the Old Hickory Partners' Operating Agreement. (Ex. B, Operating Agreement).

68. To become a member of Old Hickory Partners, each member was required to make an initial capital contribution as indicated on Exhibit A of the Operating Agreement. (Ex. B, Operating Agreement, p. 9, § 2.1).

69. Solera Multifamily's initial capital contribution was $2,000,000 in exchange for becoming a Class A member, an initial ownership percentage of 22.22% in Old Hickory Partners,

which was comprised of a Tier 1 ownership percentage of 12.14%, and a residual ownership percentage of 8.09%. (Ex. B, Operating Agreement, p. 46, Ex. A).

70. Hickory Investors' initial capital contribution was $450,000 in exchange for becoming a Class B member, an initial ownership percentage of 5% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 3.34%, and a residual ownership percentage of 2.67%. (Ex. B, Operating Agreement, p. 46, Ex. A).

71. Tegethoff Development's initial capital contribution was purported to be $750,000 in exchange for becoming a Class B member, an initial ownership percentage of 8.33% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 5.56%, and a residual ownership percentage of 4.45%. (Ex. B, Operating Agreement, p. 46, Ex. A).

72. The AET Trust was designated as a Class C member which would receive a Tier 1 ownership percentage of 30.62%, and a residual ownership percentage of 42.92% in Old Hickory Partners. (Ex. B, Operating Agreement, p. 46, Ex. A).

73. As a Class C member, the AET Trust did not make any capital contributions to Old Hickory Partners. (Ex. B, Operating Agreement, p. 46, Ex. A).

74. The total initial capital contributions by all investors in Old Hickory Partners was to be $9,000,000. (Ex. B, Operating Agreement, p. 46, Ex. A).

75. Pursuant to section 1.6 of the Operating Agreement, Old Hickory Partners' manager was Mr. Tegethoff. (Ex. B, Operating Agreement, p. 2, § 1.6).

76. As Manager of Old Hickory Partners, Mr. Tegethoff was vested with the "exclusive and plenary right, authority, and responsibility to manage and conduct the business and affairs of [Old Hickory Partners] and to enter into transactions on behalf of [Old Hickory Partners] . . . ." (Ex. B, Operating Agreement, p. 24, § 6.1(A)).

77. The Operating Agreement provided that Mr. Tegethoff could be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. B, Operating Agreement, p. 24, § 6.1(B)).

78. The Operating Agreement defined "Misconduct" as an intentional breach of the Operating Agreement and/or bad faith or willful misconduct. (Ex. B, Operating Agreement, pp. 28-29, § 6.6(A)).

79. Although Mr. Tegethoff was given broad authority, the Operating Agreement placed several restrictions on his authority, including that Mr. Tegethoff could not, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in specific [Old Hickory Partners' property] in trust for creditors . . . ." (Ex. B, Operating Agreement, p. 26, § 6.3(A)(2)).

80. The Operating Agreement also prevented Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. B, Operating Agreement, p. 26, § 6.3(A)(8)).

81. Moreover, pursuant to section 6.3(B) of the Operating Agreement, matters considered "Major Decisions" required "Major Decision Approval," which meant that a certain number of membership interests in Old Hickory Partners were required to approve the action. (Ex. B, Operating Agreement, p. 27, § 6.3(B)(2)).

82. The Operating Agreement defined "Major Decision Approval" as "the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages held by Members who are not then in Voting Default, which must also include the approval of one or more Manager." (Ex. B, Operating Agreement, p. 8, § 1.9(BB)).

83. Section 6.3(B)(2) of the Operating Agreement provided that "agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]" and any amendments thereto were decisions requiring "Major Decision Approval." (Ex. B, Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

84. Section 5.4 of the Operating Agreement provided that funds of Old Hickory Partners were to be deposited in a bank account and that Old Hickory Partners' funds or assets were not to be commingled with those of any other person or entity. (Ex. B, Operating Agreement, p. 23, § 5.4).

85. According to the Operating Agreement, Tegethoff Development Co, "an Affiliate of an Interest Holder," would receive an asset management fee and a development fee from the Limited Partnership for Tegethoff Development Co's "duties overseeing the site planning, entitlement, and construction of the Project and rendering other duties associated with the management of the Project." (Ex. B, Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

86. On or about July 18, 2022, Old Hickory Partners and RGA Real Estate Investments LLC ("RGA") entered into the Agreement of Limited Partnership of Old Hickory Village, LP (the "Limited Partnership Agreement") to form the Limited Partnership, a copy of which is attached here as **Exhibit C**.

87. Under the Limited Partnership Agreement, Old Hickory Partners served as the general partner of Old Hickory Village and RGA served as the limited partner. (Ex. C, Limited Partnership Agreement).

88. According to the Limited Partnership Agreement, RGA's committed capital contribution was $23,843,216.05 and its initial contribution was $3,792,247.15. (Ex. C, Limited Partnership Agreement, Sch. A).

89. According to the Limited Partnership Agreement, Old Hickory Partners' committed capital contribution was $8,685,045.95 and its initial contribution was $1,381,350.60. (Ex. C, Limited Partnership Agreement, Sch. A).

90. According to the Limited Partnership Agreement, both RGA and Old Hickory Partners were required to make contributions to the Limited Partnership on a periodic and pro-rata basis. (Ex. C, Limited Partnership Agreement).

91. Schedule A of the Limited Partnership Agreement suggested Old Hickory Partners' initial capital contribution included the land for the Project (having a value of $4,000,000). (Ex. C, Limited Partnership Agreement, Sch. A.).

92. This is not accurate as the land was ultimately acquired by other means.

93. The Limited Partnership Agreement identified "[Old Hickory Partners], by and through [Tegethoff Development Co (or another approved Affiliate of [Old Hickory Partners])]" as the Project's "Development Manager." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

94. According to the Limited Partnership Agreement, Old Hickory Partners, through Tegethoff Development Co, as "development manager," was required to "use its commercially reasonable efforts to cause the Project to be developed and constructed in an economical and efficient manner . . . ." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

95. Despite any other agreements, Old Hickory Partners remained "solely and primarily responsible and liable for the development and construction of the Project." (Ex. C, Limited Partnership Agreement, p. 16, § 7.05(a)(i)).

96. In exchange for its development services, Old Hickory Partners, or Tegethoff Development Co, was entitled to payment of a development fee in the amount of $3,500,000. (Ex.

C, Limited Partnership Agreement, p. 19, § 7.11(a)(i) ("In addition, the [Limited Partnership] shall pay [Old Hickory Partners] or its Affiliates (including [Tegethoff Development Co]) . . . the following fees . . . .")). *See also* (Ex. B, Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

### B. Mr. Tegethoff Immediately Misappropriates Plaintiffs' Funds for His Own Use

97. Taking monies from one project and transferring them to Tegethoff Development is a regular practice of Mr. Tegethoff's.

98. According to Mr. Yohler, a CPA and the former chief financial officer for Tegethoff Development, it was Mr. Tegethoff's practice to take cash from projects like this Project and transfer it to Tegethoff Development as a "loan." This undocumented "loan" would be used to pay unrelated Tegethoff Development expenses, as well as Mr. Tegethoff's personal expenses. When a development draw would become due, Mr. Tegethoff (or Tegethoff Development) would attempt to transfer the cash back.

99. Mr. Yohler has previously testified that Mr. Tegethoff took millions of dollars from this Project and transferred it to Tegethoff Development. Tegethoff Development used the funds for purposes unrelated to the Project.

100. Based on Mr. Tegethoff's conduct, Mr. Tegethoff knew he would not be able to return the "borrowed" funds.

101. In fact, on February 11, 2025, Mr. Yohler testified that Tegethoff Development had not repaid Old Hickory Partners in full as of that date. This was new information to the Plaintiffs.

102. As manager of Old Hickory Partners, Mr. Tegethoff owes a fiduciary duty to its members to use Old Hickory Partners' funds as intended and as represented, namely to invest in the Limited Partnership.

103. Mr. Tegethoff directed millions of dollars from Old Hickory Partners into a bank account controlled by Tegethoff Development, therefore commingling funds belonging to Old Hickory Partners with another entity in violation of Old Hickory Partners' Operating Agreement.

104. Upon information and belief, the commingled funds were used for Mr. Tegethoff's personal benefit and that Mr. Tegethoff benefitted in a concrete and personal way from his misuse of funds belonging to Plaintiffs and Old Hickory Partners.

**C. MR. TEGETHOFF IS FORCED TO INITIATE A CAPITAL CALL**

105. The Limited Partnership closed on its construction loan with Commerce Bank in October 2022.

106. However, in early 2023, it was determined that development costs would be more than $10 million higher than anticipated.

107. Therefore, pursuant to the Limited Partnership Agreement, Old Hickory Partners was responsible for obtaining and contributing its share of the additional $10 million required for development costs.

108. On or about April 17, 2023, Mr. Tegethoff informed members of Old Hickory Partners that they would be subject to a capital call to fund Old Hickory Partners' portion of the increased costs.

109. According to Mr. Tegethoff and his team, Old Hickory Partners needed to fund $1,463,460.78 to meet a final $10,463,460.78 in total capital required at the Limited Partnership level.

110. On May 23, 2023, as required by the capital call, Solera Multifamily and Hickory Investors duly paid their portion in the amounts of $325,213.51 and $23,173.04, respectively.

111. On or about July 31, 2023, to reflect the capital call, the members of Old Hickory Partners amended and restated the Operating Agreement (the "Revised Operating Agreement"), a copy of which is attached here as **Exhibit D**.

112. The Revised Operating Agreement provides Solera Multifamily's initial capital contribution was now $2,325,213.51 in exchange for becoming a Class A member, an initial ownership percentage of 22.22% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 12.14%, and a residual ownership percentage of 8.09%. (Ex. D, Revised Operating Agreement, p. 47, Ex. A).

113. The Revised Operating Agreement provides Hickory Investors' initial capital contribution was now $523,173.04 in exchange for becoming a Class B member, an initial ownership percentage of 5% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 3.34%, and a residual ownership percentage of 2.67%. (Ex. D, Revised Operating Agreement, p. 47, Ex. A).

114. The Revised Operating Agreement provides Tegethoff Development's supposed initial capital contribution was now $871,955.07 in exchange for becoming a Class B member, an initial ownership percentage of 8.33% in Old Hickory Partners, which consisted of a Tier 1 ownership percentage of 5.56%, and a residual ownership percentage of 4.45%. (Ex. D, Revised Operating Agreement, p. 47, Ex. A).

115. The AET Trust was again designated as a Class C member which would receive a Tier 1 ownership percentage of 30.62%, and a residual ownership percentage of 42.92% in Old Hickory Partners. (Ex. D, Revised Operating Agreement, p. 47, Ex. A).

116. As a Class C member, the AET Trust again made no capital contributions to Old Hickory Partners. (Ex. D, Revised Operating Agreement, p. 47, Ex. A).

117. The Revised Operating Agreement maintains Mr. Tegethoff as manager of Old Hickory Partners. (Ex. D, Revised Operating Agreement, p. 4, § 1.6).

118. As Manager of Old Hickory Partners, Mr. Tegethoff is still vested with the "exclusive and plenary right, authority, and responsibility to manage and conduct the business and affairs of [Old Hickory Partners] and to enter into transactions on behalf of [Old Hickory Partners] . . . ." (Ex. D, Revised Operating Agreement, p. 24, § 6.1(A)).

119. The Revised Operating Agreement provides that Mr. Tegethoff may be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. D, Revised Operating Agreement, p. 24, § 6.1(B)).

120. The Revised Operating Agreement defines "Misconduct" as an intentional breach of the Revised Operating Agreement and/or bad faith or willful misconduct. (Ex. D, Revised Operating Agreement, p. 29, § 6.6(A)).

121. Although Mr. Tegethoff was given broad authority, the Revised Operating Agreement places several restrictions on his authority, including that Mr. Tegethoff cannot, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in specific [Old Hickory Partners' property] in trust for creditors . . . ." (Ex. D, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

122. The Revised Operating Agreement also prevents Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. D, Revised Operating Agreement, p. 27, § 6.3(A)(8)).

123. Moreover, pursuant to section 6.3(B) of the Revised Operating Agreement, matters considered "Major Decisions" require "Major Decision Approval," which means that a certain

number of membership interests in Old Hickory Partners are required to approve the action. (Ex. D, Operating Agreement, p. 27, § 6.3(B)(2)).

124. The Revised Operating Agreement defines “Major Decision Approval” as “the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages held by Members who are not then in Voting Default, which must also include the approval of one or more Manager.” (Ex. D, Revised Operating Agreement, p. 8, § 1.9(BB)).

125. Section 6.3(B)(2) of the Revised Operating Agreement provides “agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]” and any amendments thereto is a decision requiring “Major Decision Approval.” (Ex. D, Revised Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

126. Section 5.4 of the Revised Operating Agreement provides that funds of Old Hickory Partners are to be deposited in a bank account and that Old Hickory Partners’ funds or assets are not to be commingled with those of any other person or entity. (Ex. D, Revised Operating Agreement, p. 24, § 5.4).

127. According to the Revised Operating Agreement, Tegethoff Development Co, “an Affiliate of an Interest Holder,” continues to receive an asset management fee and a development fee from the Limited Partnership for Tegethoff Development Co’s “duties overseeing the site planning, entitlement, and construction of the Project and rendering other duties associated with the management of the Project.” (Ex. D, Revised Operating Agreement, p. 5, § 1.9(E); *id.* at p. 6, § 1.9(Q)).

128. On July 31, 2023, to reflect the capital call, the Limited Partnership also revised the Limited Partnership Agreement (the "Revised Limited Partnership Agreement"), a copy of which is attached as **Exhibit E**.

129. According to the Revised Limited Partnership Agreement, RGA's committed capital contribution was $28,725,531, and its total capital contribution was $28,725,531. (Ex. E, Revised Limited Partnership Agreement, Sch. A).

130. According to the Revised Limited Partnership Agreement, Old Hickory Partners' committed capital contribution was $10,463,461, and its total capital contribution was $10,463,461. (Ex. E, Revised Limited Partnership Agreement, Sch. A).

131. Like with the Limited Partnership Agreement, Schedule A of the Revised Limited Partnership Agreement suggests Old Hickory Partners' initial capital contribution included the land for the Project (having a value of $4,000,000). (Ex. E, Revised Limited Partnership Agreement, Sch. A).

132. This is not accurate as the land was ultimately acquired by other means.

133. Although Old Hickory Partners, through Tegethoff Development Co, was still entitled to receive a development fee, the development fee was reduced to $2,500,000. (Ex. E, Revised Limited Partnership Agreement, p. 2, § 1(f)).

### D. OLD HICKORY PARTNERS FAILS TO PAY THE CONTRACTOR AND THE PROJECT IS DELAYED

134. During construction of the Project, Plaintiffs received weekly project reports reflecting pay applications or invoices from Brinkmann Constructors ("Brinkmann"), the Project's general contractor.

135. The reports revealed that Brinkmann regularly had a significant amount of outstanding unpaid invoices, exceeding $20 million during May-June 2024, for work Brinkmann performed during construction.

136. The Limited Partnership and Old Hickory Partners lacked the funds necessary to pay Brinkmann because Tegethoff Development and Mr. Tegethoff misappropriated Old Hickory Partners' funds and used them for purposes unrelated to the Project.

137. The inability to timely pay Brinkmann significantly delayed the progression of the Project.

**E. OLD HICKORY PARTNERS FAILS TO FUND ITS FULL CAPITAL COMMITMENT**

138. By mid-2024, Old Hickory Partners still had not contributed its entire capital commitment to the Limited Partnership and was $4 million short of the total required by it under the Revised Limited Partnership Agreement (the "Four Million Dollar Deficit").

139. Old Hickory Partners lacked the funds necessary to satisfy the Four Million Dollar Deficit because Tegethoff Development and Mr. Tegethoff misappropriated Old Hickory Partners' funds and used them for purposes unrelated to the Project.

140. Had Mr. Tegethoff not previously misappropriated funds belonging to Old Hickory Partners, Old Hickory Partners would have had enough cash on-hand to make its full capital contribution to the Limited Partnership.

141. Instead, to save the Project and cover for Old Hickory Partners' capital shortfall, RGA agreed to increase its own capital contributions to cover the Four Million Dollar Deficit to allow the Project to continue and to pay Brinkmann's remaining outstanding invoices.

### F. The Dilution of Plaintiffs' Interest in Old Hickory Partners

142. To facilitate RGA's additional contribution, Old Hickory Partners and RGA executed a second amendment to the Revised Limited Partnership Agreement which increased RGA's real capital commitment and decreased Old Hickory Partners' real capital commitment. *See* (**Exhibit F**, Second Revised Limited Partnership Agreement).

143. According to the Second Revised Limited Partnership Agreement, RGA's capital commitment and contributions were $31,573,918, resulting in a 80.57% capital percentage and a 84.20% percentage interest. (Ex. F, Second Revised Limited Partnership Agreement, Sch. A).

144. According to the Second Revised Limited Partnership Agreement, Old Hickory Partners' capital commitment and contributions were reduced to $7,615,074, resulting in a 19.43% capital percentage and a 15.80% percentage interest. (Ex. F, Second Revised Limited Partnership Agreement, Sch. A).

145. This is $2,848,387 less than Old Hickory Partners' capital commitment and contributions prior to the Four Million Dollar Deficit. *Compare* (Ex. F, Second Revised Limited Partnership Agreement, Sch. A) *with* (Ex. E, Revised Limited Partnership Agreement, Sch. A).

146. The $2,848,387 difference is almost exactly the same amount as Plaintiffs' contributions to Old Hickory Partners, which was $2,798,386.55.

147. Because Old Hickory Partners' interest in the Limited Partnership was diluted at the project-level, each member's interest in the Project (via their investments in Old Hickory Partners) was also diluted in accordance with each member's respective contributions.

148. Old Hickory Partners did not vote on the dilution nor did it execute a second Revised Operating Agreement or otherwise obtain the written consent of Old Hickory Partners' members, despite Old Hickory Partners' Operating Agreement requiring "Major Decision

Approval" for such activity. *See* (Ex. D, Revised Operating Agreement, p. 8, § 1.9(BB) (defining "Major Decision Approval")).

149. Plaintiffs were not, and have never been, in voting default, as defined by the Revised Operating Agreement, when the dilution took place.

150. Moreover, based on the Second Revised Limited Partnership Agreement, one would expect there would be a corresponding amendment to the Revised Operating Agreement for Old Hickory Partners, which would have required Major Decision Approval, or some form of written consent. (Ex. D, Revised Operating Agreement, p. 27, § 6.3(B)(4)).

151. Solera Multifamily and Hickory Investors are unaware of any second Revised Operating Agreement, written consents, or amendments.

152. Moreover, Mr. Tegethoff has taken steps to actively conceal his fraud and tortious conduct by refusing to communicate with Plaintiffs regarding the affairs of Old Hickory Partners and has refused to provide financial statements for Old Hickory Partners as requested by Plaintiffs and required by the Revised Operating Agreement. (Ex. D, Revised Operating Agreement, p. 21, § 5.1(A)).

153. On or about December 16, 2025, Plaintiffs demanded Old Hickory Partners provide Plaintiffs access to its books and records. (**Exhibit G**, Demand for Inspection).

154. Old Hickory Partners failed to respond.

155. Plaintiffs only recently discovered the true nature of all of Defendants' conduct.

### G. MR. TEGETHOFF'S SCHEMES CONTINUE

156. Plaintiffs are not the only victims of Mr. Tegethoff's efforts to conceal his fraud and tortious conduct.

157. On October 24, 2025, business entities owned in whole or in part by the Bushes, and not parties to this litigation, obtained a $13,000,000 agreed judgment (the "Judgment") against Mr. Tegethoff, Tegethoff Development, and another related entity in the Marion County, Indiana Commercial Court, Cause No. 49D01-2312-PL-049785 (the "Indiana Litigation").

158. According to correspondence from Commerce Bank dated December 8, 2025, Mr. Tegethoff did not disclose the existence of (or agreement to) the Judgment to Commerce Bank, in violation of the Limited Partnership's construction loan. *See* (**Exhibit H**, Commerce Bank Letter, p. 1).

159. Specifically, Commerce Bank was made aware of the Judgment "without input" from Mr. Tegethoff and Tegethoff Development, which "at a minimum violates the spirit of not only the relationship between [Mr. Tegethoff and Tegethoff Development] and the Lenders but the terms and conditions of the Loan Documents as well." (Ex. H, Commerce Bank Letter, p. 1).

160. Moreover, if the Judgment remains unpaid, the Judgment is an event of default under the Limited Partnership and Commerce Bank's loan agreement. (Ex. H, Commerce Bank Letter, pp. 1-2).

161. As of the filing of this complaint, the Judgment remains unsatisfied.

162. By agreeing to the Judgment, refusing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy it, Mr. Tegethoff continues to breach his obligations owed to Plaintiffs and Old Hickory Partners.

163. It would be futile to make a demand on Mr. Tegethoff, manager of Old Hickory Partners, to bring an action against himself for harm done to Old Hickory Partners, because Mr. Tegethoff would necessarily have to bring it against himself and his related entities.

164. Any demand on Mr. Tegethoff and Old Hickory Partners would be useless and unavailing because Mr. Tegethoff has committed fraudulent acts.

**COUNT ONE**
**(Breach of Contract against Jeffrey J. Tegethoff)**

165. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

166. The Revised Operating Agreement is a valid and enforceable contract entered into by Plaintiffs, among others, and Mr. Tegethoff, as manager of Old Hickory Partners.

167. Section 5.4 of the Revised Operating Agreement requires funds belonging to Old Hickory Partners to be deposited in a bank account and such funds or assets are not to be commingled with those of any other person. (Ex. D, Revised Operating Agreement, p. 24, § 5.4).

168. Section 6.3(A)(2) of the Revised Operating Agreement prohibits, without the consent of all members, Mr. Tegethoff from possessing any of Old Hickory Partners' property. (Ex. D, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

169. Section 6.6(A) of the Revised Operating Agreement makes Mr. Tegethoff liable to Plaintiffs for his misconduct. (Ex. D, Revised Operating Agreement, p. 29, § 6.6(A)).

170. The Revised Operating Agreement defines "Misconduct" as an intentional breach of the Revised Operating Agreement and/or bad faith or willful misconduct. (Ex. D, Revised Operating Agreement, p. 29, § 6.6(A)).

171. Although Mr. Tegethoff was given broad authority, the Revised Operating Agreement places several restrictions on his authority, including that Mr. Tegethoff could not, without the consent of all members, "possess [Old Hickory Partners'] property, or assign rights in specific [Old Hickory Partners' property] in trust for creditors . . . ." (Ex. D, Revised Operating Agreement, p. 26, § 6.3(A)(2)).

172. The Revised Operating Agreement also prevents Mr. Tegethoff from taking certain actions on behalf of Old Hickory Partners with respect to the Limited Partnership. (Ex. D, Revised Operating Agreement, p. 27, § 6.3(A)(8)).

173. Moreover, pursuant to section 6.3(B) of the Revised Operating Agreement, matters considered "Major Decisions" require "Major Decision Approval," which means that a certain number of membership interests in Old Hickory Partners were required to approve the action. (Ex. D, Revised Operating Agreement, p. 27, § 6.3(B)(2)).

174. The Operating Agreement defines "Major Decision Approval" as "the approval of a Company action or decision by the Class A and Class B Members, voting together as a single class, owning more than sixty-five percent (65%) of the Initial Ownership Percentages held by Members who are not then in Voting Default, which must also include the approval of one or more Manager." (Ex. D, Revised Operating Agreement, p. 8, § 1.9(BB)).

175. Section 6.3(B)(2) of the Revised Operating Agreement considers "agree[ing] to vote in favor of, on behalf of [Old Hickory Partners] under the [Old Hickory Village Limited Partnership Agreement]" and any amendments thereto a decision requiring "Major Decision Approval." (Ex. D, Operating Agreement, 27. 8, § 6.3(B)(2)(4)).

176. The Revised Operating Agreement defines "Voting Default" as at the time a vote would be taken, such member "(1) has committed or is the subject of Misconduct; (2) is the subject of a Guarantor Event, or (3) has Transferred or attempted to Transfer its Interest in violation of Article VII . . . ." (Ex. D, Revised Operating Agreement, p. 8, § 1.9(NN)).

177. The Revised Operating Agreement provides that if "any party obtains a judgment against any other party by reason of breach of [the Revised Operating Agreement], a reasonable

attorney's fee as fixed by the court shall be included in such judgment." (Ex. D, Revised Operating Agreement, p. 40, § 9.5(A)).

178. Plaintiffs have never been in Voting Default.

179. Plaintiffs have never voted to approve Mr. Tegethoff's commingling of assets, possession of Old Hickory Partners' property, or dilution of Old Hickory Partners' interest in the Project.

180. Plaintiffs have never been notified by Mr. Tegethoff or any of his entities about the circumstances leading to or the fact that there were changes to the Revised Limited Partnership Agreement that resulted in the dilution of Old Hickory Partners.

181. Mr. Tegethoff breached the Revised Operating Agreement by commingling funds belonging to Old Hickory Partners with funds belonging to himself and Tegethoff Development in violation of Sections 5.4 and 6.3 of the Revised Operating Agreement.

182. Mr. Tegethoff breached the Revised Operating Agreement by possessing Old Hickory Partners' property without the consent of all members in violation of Section 6.3(A)(2) of the Revised Operating Agreement.

183. Because Mr. Tegethoff, as manager of Old Hickory Partners, misused Old Hickory Partners' funds for his own benefit in a willful and malicious manner, and otherwise breached the Revised Operating Agreement, Mr. Tegethoff has committed misconduct and is liable to Old Hickory Partners pursuant to Section 6.6(A) of the Revised Operating Agreement.

184. Because Mr. Tegethoff, as manager of Old Hickory Partners, knowingly consented to entry of the Judgment in the Indiana Litigation, failed to apprise Commerce Bank of the Judgment, and has refused to satisfy the Judgment, Mr. Tegethoff has acted in a willful and

malicious manner and has committed misconduct and is liable to Old Hickory Partners pursuant to Section 6.6(A) of the Revised Operating Agreement.

185. Mr. Tegethoff breached the Revised Operating Agreement by, as a part of a scheme to conceal his prior misappropriation of Old Hickory Partners' investor funds, agreeing to dilute Old Hickory Partners' interest in the Limited Partnership without conducting a vote of the Old Hickory Partners' members in violation of Section 6.3(A)(8) and 6.3(B)(2) of the Revised Operating Agreement.

186. As a direct and proximate result of each individual breach of the Revised Operating Agreement by Mr. Tegethoff, Plaintiffs have incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count One, awarding them damages in amount to be proven at trial, plus costs and expenses, attorneys' fees, pre- and post-judgment interest, and all other appropriate relief.

## COUNT TWO
## (Breach of Fiduciary Duty against Jeffrey J. Tegethoff)

187. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

188. Plaintiffs entered into the Revised Operating Agreement, with Mr. Tegethoff, as manager.

189. As manager of Old Hickory Partners, Mr. Tegethoff has a duty to conduct the affairs of Old Hickory Partners in the best interests of Old Hickory Partners and owes fiduciary duties to Plaintiffs.

190. By commingling funds owned by Old Hickory Partners with funds owned by Tegethoff Development, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

191. By possessing Old Hickory Partners' property without the consent of all members of Old Hickory Partners, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

192. By committing misconduct, including using Old Hickory Partners' property for his own personal use and benefit, diluting Old Hickory Partners' interest in the Limited Partnership in the process, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

193. By committing further misconduct, including agreeing to the Judgment in the Indiana Litigation, failing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy the Judgment, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

194. By refusing to communicate with Plaintiffs regarding the affairs of Old Hickory Partners, Mr. Tegethoff breached his fiduciary duties owed to Plaintiffs.

195. Plaintiffs have been harmed by Mr. Tegethoff's fiduciary breaches.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Two, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT THREE**
**(Fraud in the Inducement against Jeffrey J. Tegethoff)**

196. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

197. In his statements and through the Operating Agreement, Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners and represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership.

198. These representations were false.

199. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he did not intend to invest their full capital contributions in the Limited Partnership.

200. Despite his duty otherwise, Mr. Tegethoff remained silent.

201. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he would instead "borrow" funds from Old Hickory Partners for his own personal use.

202. Despite his duty otherwise, Mr. Tegethoff remained silent.

203. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he could not and would not reimburse Old Hickory Partners and would instead dilute Plaintiffs' interest in the Project to cover for his misdeeds.

204. Despite his duty otherwise, Mr. Tegethoff remained silent.

205. These representations and omissions were material, because without them, Plaintiffs would not have purchased membership interests in Old Hickory Partners.

206. At the time Mr. Tegethoff induced Plaintiffs to purchase membership interests in Old Hickory Partners as an ultimate investment in the Limited Partnership, in ignorance of the falsity of his statements, Mr. Tegethoff knew that he and his entity, Tegethoff Development, would use Plaintiffs' funds for his own personal benefit and that he and his entity, Tegethoff Development, would be unable to reimburse Old Hickory Partners' funds.

207. Plaintiffs reasonably relied on Mr. Tegethoff's representations and omissions regarding Plaintiffs becoming members in Old Hickory Partners and the use of their capital contributions.

208. Plaintiffs had a right to rely on Mr. Tegethoff's representations.

209. As a direct and proximate cause of Mr. Tegethoff's false representations and omissions (including his silence when a duty to speak existed), Plaintiffs incurred damages in an amount to be proven at trial.

210. Because Mr. Tegethoff's conduct was intentional and outrageous due to Mr. Tegethoff's reckless indifference to the rights of Plaintiffs, Plaintiffs are entitled to compensatory and punitive damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Three, either (1) awarding them damages in amount to be proven at trial, including punitive damages, attorneys' fees, costs and expenses, post-judgment interest, and all other appropriate relief; or (2) rescinding the Revised Operating Agreement as to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, declaring it unenforceable as to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, and directing Defendant, Jeffrey J. Tegethoff, to refund Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC's, investment.

## COUNT FOUR
## (Securities Fraud against Jeffrey J. Tegethoff under Federal Law)

211. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

212. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful "[t]o use or employ, in connection with purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).



41858051.v1

213. Furthermore, SEC Rule 10b-5 implements Section 10(b) by declaring it unlawful, "in connection with the purchase or sale of any security," "(a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operations or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5.

214. According to 15 U.S.C. § 78c(a)(10), a "security" is "any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 U.S.C. § 78c(a)(10).

215. The membership interests in Old Hickory Partners qualify as securities under federal law.

216. Mr. Tegethoff represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership in order to manipulate, use as

a deceptive device, and defraud Plaintiffs into purchasing membership interests in Old Hickory Partners in violation of Section 10b and Rule 10b-5.

217. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he did not intend to invest Plaintiffs' full capital contributions in the Limited Partnership, that he would instead "borrow" funds for Old Hickory Partners for his own personal use, and that he could not and would not reimburse Old Hickory Partners.

218. Mr. Tegethoff violated his duty and remained silent in order to manipulate, use as a deceptive device, and defraud Plaintiffs into purchasing shares of Old Hickory Partners in violation of Section 10b and Rule 10b-5.

219. Plaintiffs have suffered damages because their interest in Limited Partnership is significantly diluted and will result in a lower payout, due to Mr. Tegethoff's misrepresentations and omissions.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Four, awarding them damages in amount to be proven at trial, including attorneys' fees, costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT FIVE**
**(Securities Fraud against Jeffrey J. Tegethoff under Missouri Law)**

220. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

221. Missouri Code § 409.5-509(b) makes it unlawful to sell a security, "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof

that the seller did not know and, in exercise of reasonable care, could not have known of the untruth or omission." Mo. Code § 409.5-509(b).

222. Under Missouri law, "security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness ... investment contract; ... or, in general, an interest or instrument commonly known as a "security . . . ." Mo. Code § 409.1-102(28).

223. The membership interests in Old Hickory Partners qualify as securities under Missouri law.

224. Mr. Tegethoff represented to Plaintiffs that their investments in Old Hickory Partners would be contributed as capital to the Limited Partnership in order to manipulate, use as a deceptive device, and defraud Plaintiffs into purchasing membership interests in Old Hickory Partners in violation of Missouri Code § 409.5-509(b).

225. Mr. Tegethoff, as manager of Old Hickory Partners, had a duty to tell Plaintiffs that he did not intend to invest Plaintiffs' full capital contributions in the Limited Partnership, that he would instead "borrow" funds for Old Hickory Partners for his own personal use, and that he could not and would not reimburse Old Hickory Partners.

226. Mr. Tegethoff violated his duty and remained silent in order to manipulate, use as a deceptive device, and defraud Plaintiffs into purchasing shares of Old Hickory Partners in violation of Missouri Code § 409.5-509(b).

227. Plaintiffs have suffered damages because their interest in Limited Partnership is significantly diluted and will result in a lower payout, due to Mr. Tegethoff's misrepresentations and omissions.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, on this Count Five,

awarding them damages in amount to be proven at trial, including attorneys' fees, costs and expenses, interest from the date of the purchase of their interests in Old Hickory Partners, LLC, post-judgment interest, and all other appropriate relief.

**COUNT SIX**
**(Theft/Conversion against Jeffrey J. Tegethoff and Tegethoff Development, LLC)**

228. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

229. By receiving funds paid by Plaintiffs to purchase membership interests in Old Hickory Partners, Mr. Tegethoff and Tegethoff Development exercised unauthorized control, and continue to exercise unauthorized control, over Plaintiffs' funds in denial of Plaintiffs' rights to their funds.

230. Plaintiffs paid funds to the care of Mr. Tegethoff for the specific purpose of purchasing membership interests in Old Hickory Partners.

231. Mr. Tegethoff and Tegethoff Development were and are aware of the high probability that their control over Plaintiffs' funds was unauthorized because Mr. Tegethoff had a fiduciary duty to use Plaintiffs' funds for the benefit of Old Hickory Partners.

232. As a direct and proximate result of Mr. Tegethoff and Tegethoff Development's theft and/or conversion of Plaintiffs' funds, Plaintiffs have incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, in his capacity as sole member of Defendant, Tegethoff Development, LLC, and Defendant, Tegethoff Development, LLC, on this Count Six, awarding them compensatory and punitive damages in to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT SEVEN**
**(Unjust Enrichment against AET 2021 Revocable Trust)**

233. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

234. The AET Trust knowingly received property from Plaintiffs to personally benefit and enrich its trustee and beneficiaries.

235. The AET Trust received the benefit of Plaintiffs' property at Plaintiffs' expense.

236. It would be unfair and unjust for the AET Trust to retain the benefits it obtained at the expense of Plaintiffs.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, AET 2021 Irrevocable Trust, on this Count Seven, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT EIGHT**
**(Unjust Enrichment against the Mono Suerte Trust)**

237. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

238. The Mono Suerte Trust knowingly received property from Plaintiffs to make down payments on the purchase of a luxury home it owns for its own benefit.

239. The Mono Suerte Trust received the benefit of Plaintiffs' property at Plaintiffs' expense.

240. It would be unfair and unjust for the Mono Suerte Trust to retain the benefits it obtained at the expense of Plaintiffs.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, the Mono Suerte Trust, on this Count Eight, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT NINE**
**(Unjust Enrichment against Tegethoff Development Co, LLC)**

241. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

242. Tegethoff Development Co, through Old Hickory Partners, received development fees for work it allegedly performed on behalf of the Project.

243. Through the misappropriation of funds by Tegethoff Development and Mr. Tegethoff, Tegethoff Development Co took the development fees from the Limited Partnership, leaving Old Hickory Partners cash poor as a result.

244. Tegethoff Development Co, through its single member, Mr. Tegethoff, knew Mr. Tegethoff and Tegethoff Development did not have the ability to replace the misappropriated funds.

245. Yet Tegethoff Development Co continued to knowingly receive property from the Limited Partnership, despite knowing the Project was being damaged and knowing Old Hickory Partners lacks sufficient funds to meet its obligations under the Revised Limited Partnership Agreement.

246. Tegethoff Development Co thus received the benefit of Plaintiffs' investment funds at Plaintiffs' expense.

247. It would be unfair and unjust for Tegethoff Development Co to retain the benefits it obtained at the expense of Plaintiffs.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Tegethoff Development Co, LLC, on this Count Nine, awarding them damages in amount to be proven at trial, plus costs and expenses, post-judgment interest, and all other appropriate relief.

**COUNT TEN**
**(Request for Declaratory Relief)**

248. Plaintiffs incorporate by reference the foregoing paragraphs as if fully restated herein.

249. Section 6.1(B) of the Revised Operating Agreement provides Mr. Tegethoff may be removed as manager "at any time for Misconduct by a decision to do so by any Member." (Ex. D, Revised Operating Agreement, p. 24, § 6.1(B)).

250. Mr. Tegethoff has committed misconduct in his role as manager of Old Hickory Partners by commingling funds belonging to Old Hickory Partners with funds belonging to himself and Tegethoff Development, by possessing Old Hickory Partners' property without the consent of all members of Old Hickory Partners, by misusing and converting/stealing Old Hickory Partners' funds for his own benefit, by staying silent when he had a duty to speak, and by failing to conduct a vote of the Old Hickory Partners' members regarding Old Hickory Partners' membership interest in the Limited Partnership.

251. Mr. Tegethoff has further committed misconduct by agreeing to the Judgment in the Indiana Litigation, failing to apprise Commerce Bank of the existence of the Judgment, and refusing to satisfy it.

252. The dispute between the parties is a 'case or controversy' pursuant to Article III of the United States Constitution.

253. Plaintiffs are entitled to a declaration that Mr. Tegethoff has acted fraudulently and/or has engaged in willful misconduct such that Mr. Tegethoff must be removed as Old Hickory Partners' manager and that they are entitled to seek to recover any liability owed to them and Old Hickory Partners caused by Mr. Tegethoff's fraudulent or willful misconduct.

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, seek entry of judgment in their favor and against Defendant, Jeffrey J. Tegethoff, declaring that Defendant, Jeffrey J. Tegethoff, engaged in fraud and/or willful misconduct and that Defendant, Jeffrey J. Tegethoff, must be removed as manager of Old Hickory Partners, LLC in accordance with the Revised Operating Agreement, that Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC are entitled to seek to recover any liability owed to Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, and Old Hickory Partners, LLC caused by Defendant, Jeffrey J. Tegethoff's, fraudulent or willful misconduct, and all other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, pray for relief as follows:

a. Judgment in their favor and against Defendants, Jeffrey J. Tegethoff, Tegethoff Development, LLC, the AET 2021 Irrevocable Trust, the Mono Suerte Trust, and Tegethoff Development Co, LLC;

b. An award to Plaintiffs, Solera Multifamily, LLC, and Hickory Investors, LLC, of all damages, compensatory and punitive, costs, attorneys' fees, prejudgment interest, post-judgment interest, and other amounts to which Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, are entitled by law and against Defendants, Jeffrey J. Tegethoff, Tegethoff

Development, LLC, the AET 2021 Irrevocable Trust, the Mono Suerte Trust, and Tegethoff Development Co, LLC;

c. A declaration that Defendant, Jeffrey J. Tegethoff, engaged in fraud and/or willful misconduct and that Defendant, Jeffrey J. Tegethoff, must be removed as manager of Old Hickory Partners, LLC in accordance with Old Hickory Partners' Amended and Restated Operating Agreement; and

d. All other relief that is appropriate.

**JURY DEMAND**

Plaintiffs, Solera Multifamily, LLC and Hickory Investors, LLC, demand a trial by jury on all issues so triable.

*/s/ Clayton G. Kuhn*

Clayton G. Kuhn (55222MO)
Corbin M. Robinson (74810MO)
SANDBERG PHOENIX & von GONTARD P.C.
701 Market Street, Suite 600
St. Louis, Missouri 63101
314-231-3332
314-241-7604 (fax)
ckuhn@sandbergphoenix.com
crobinson@sandbergphoenix.com

Aaron D. Grant, *pro hac vice* application forthcoming
Kaylin O. Cook, *pro hac vice* application forthcoming
McCARTER & ENGLISH, LLP
10 E. Main Street, Suite 200
Carmel, Indiana 46032
317-810-5500
agrant@mccarter.com
kcook@mccarter.com

*Attorneys for Plaintiffs*